IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMOND FITRIYAOHNIYA-JACKSON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. DKC-20-2547 |
| DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES, PATUXENT INSTITUTION, and OFFICER JOSEPH McLEISH, | * * | |
| | * | |
| Defendants. | | |

\*\*\*

## MEMORANDUM OPINION

Self-represented Plaintiff Jamond Fitriyaohniya-Jackson, an inmate presently incarcerated at the Patuxent Institution ("Patuxent") in Jessup, Maryland, filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983 against the Department of Public Safety and Correctional Services ("DPSCS"), Patuxent, and Officer Joseph McLeish. ECF No. 1. In a supplement to the complaint, Mr. Fitriyaohniya-Jackson alleges that Defendants wrongfully placed him in administrative segregation for 100 days after he was assaulted by another inmate. ECF No. 4. He claims that as a result, he was unable to work and thus lost his salary and additional benefits. *Id.* at 7.

Defendants filed a motion to dismiss or, in the alternative, for summary judgment. ECF No. 19. The court informed Mr. Fitriyaohniya-Jackson, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that the failure to file a response in opposition to the motion could result in the dismissal of the complaint. ECF No. 20. Mr. Fitriyaohniya-Jackson has filed nothing further.

Having reviewed the submitted materials, the court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, Defendants' motion will be granted.

## BACKGROUND

Mr. Fitriyaohniya-Jackson alleges that on April 20, 2020, he was walking to his cell when he was assaulted by another inmate "for no reason." Compl., ECF No. 1 at 1-2. Following the incident, Officer McLeish placed Mr. Fitriyaohniya-Jackson in administrative segregation for 100 days. *Id.* at 2. As a result of the placement, he was taken off the sanitation worker list and was not paid his usual salary. *Id.* Mr. Fitriyaohniya-Jackson further alleges that in July 2020, he discovered that the inmate who assaulted him continued to work on the sanitation detail. Supp., ECF No. 4 at 2.

Defendants do not dispute that on April 20, 2020, Mr. Fitriyaohniya-Jackson reported that he was assaulted by another inmate. Decl. of McLeish, ECF No. 19-3, ¶ 4. Officer McLeish responded to the scene, radioed for back-up to detain the alleged assailant, and asked another officer to escort Mr. Fitriyaohniya-Jackson to the medical department for an examination and treatment. *Id.* Subsequently, Lt. Sheryl Goldman recommended assignment of both Mr. Fitriyaohniya-Jackson and his assailant to administrative segregation. Decl. of Goldman, ECF No. 19-5, ¶ 3; *see also* Inmate Traffic History, ECF No. 19-6 at 3, 8. According to Lt. Goldman, for continued protection of Mr. Fitriyaohniya-Jackson, "it was decided that both he and [his assailant] would be kept separate and outside of general population until there was an indication that they could safely interact with each other and they received clearance from their mental health care providers." ECF No. 19-5, ¶ 8. Lt. Goldman "did not recommend that either inmate be removed

from payroll or their jobs." *Id.*, ¶ 4. Rather, they "were assessed the same mental health status level and were housed on the same functional tier . . . to receive the same level of care." *Id.*, ¶ 5.

On May 10, 2020, the case management department decided to continue the administrative segregation assignments for both inmates. *Id.*, ¶ 7. The recommendation resulted in the removal of both inmates from payroll for their sanitation jobs. *Id.* However, Mr. Fitriyaohniya-Jackson received payment for his sanitation job from the time he was placed in segregation on April 20, 2020, until he was formally assigned to segregation and removed from the job on May 10, 2020. *See* Inmate Account Summary, ECF No. 19-6 at 5, 6.

On July 13, 2020, Mr. Fitriyaohniya-Jackson submitted a written statement informing Patuxent staff that he no longer feared his assailant and that they resolved their differences. ECF No. 19-5, ¶ 9; *see also* Inmate Statement, ECF No. 19-7 at 9. Contrary to the allegation in his complaint, Mr. Fitriyaohniya-Jackson acknowledged in the statement that, like him, his assailant had also been in administrative segregation where he was unable to "come out his cell[,] work & injoy [sic] his privileges." ECF No. 19-7 at 9. On September 4, 2020, the case management department removed both inmates from administrative segregation. ECF No. 19-5, ¶ 9. Following reassignment, both inmates needed clearance from their mental health care providers before returning to work. *Id.*, ¶ 10.

On August 25, 2020, Mr. Fitriyaohniya-Jackson filed a request for administrative remedy ("ARP"), complaining that after he was assaulted on April 20, 2020, Officer McLeish "let prison put [him] on administrative seg 100 days" when it "should [have] been no fault job related injury/like slip in [sic] fall." ARP, ECF No. 19-7 at 6. Mr. Fitriyaohniya-Jackson also alleged that in July 2020, he lost his job while his assailant's name remained on the job list. *Id.* On September 21, 2020, the Patuxent Warden dismissed Mr. Fitriyaohniya-Jackson's ARP, explaining that Mr.

3

Fitriyaohniya-Jackson was ineligible for a job while in administrative segregation but was reinstated on the job list once he was transferred to general population. *Id.* at 3.  Mr. Fitriyaohniya-Jackson acknowledged receipt of the Warden's decision on October 7, 2020.  *Id.*  He did not appeal to the Commissioner of Correction, nor did he file a grievance with the Inmate Grievance Office ("IGO").  *See* ECF No. 4 at 6.

## STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim.  However, the complaint must allege sufficient facts to establish those elements."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphases added).  "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original).  The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v.*

*Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

## DISCUSSION

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, entry of judgment in their favor pursuant to Rule 56(c), arguing that: (1) they are immune from suit for claims against them in their official capacity; (2) DPSCS and Patuxent are not entities subject to suit under § 1983; (3) Mr. Fitriyaohniya-Jackson failed to exhaust his administrative remedies; (4) Mr. Fitriyaohniya-Jackson fails to allege a violation of the Equal Protection Clause; (5) Mr. Fitriyaohniya-Jackson fails to state a claim of failure to protect him from harm; (6) Mr. Fitriyaohniya-Jackson's assignment to administrative segregation did not violate his constitutional rights; (7) Mr. Fitriyaohniya-Jackson does not have a constitutional right to have a job in prison; (8) there is no *respondeat superior* liability in this case; and (9) qualified immunity precludes Defendants' liability.  ECF No. 19-1.

### A.   DPSCS & Patuxent

As a preliminary matter, DPSCS and Patuxent are not "persons" subject to suit under 42 U.S.C. § 1983[1] and, therefore, Mr. Fitriyaohniya-Jackson's claims against them must be dismissed.

---

[1] That section states: "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. §1983 (emphasis supplied).

*See* 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n.55 (1978) (noting that for purposes of § 1983 a "person" includes individuals and "bodies politic and corporate"); *see generally* 5 Charles Alan Wright, *et al.*, Fed. Prac. & Proc. § 1230 (2002). A number of courts have held that inanimate objects such as buildings, facilities, and grounds do not act under color of state law and are not subject to suit under § 1983. *See Smith v. Montgomery Cty. Corr. Facility*, Civil Action No. PWG-13-3177, 2014 WL 4094963, at *3 (D. Md. Aug. 18, 2014) (holding that Montgomery County Correctional Facility "is an inanimate object that cannot act under color of state law and therefore is not a 'person' subject to suit under Section 1983"); *Preval v. Reno*, 57 F.Supp.2d 307, 310 (E.D. Va. 1999) (stating that "the Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983"); *Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1301 (E.D. N.C. 1989) (noting that "[c]laims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit"). Conduct amenable to suit under 42 U.S.C. § 1983 must be conduct undertaken by a person, and DPSCS and Patuxent are not persons within the meaning of the statute. Thus, the claims against them shall be dismissed.

      B.      **Exhaustion**

Defendants raise the affirmative defense that Mr. Fitriyaohniya-Jackson has failed properly to exhaust his administrative remedies. ECF No. 33-1 at 22-23. If Mr. Fitriyaohniya-Jackson's claims were not properly presented through the administrative remedy procedure, they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e.

The Prisoner Litigation Reform Act provides, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. App'x. 253 (4th Cir. 2004).

Although exhaustion under § 1997e(a) is not a jurisdictional prerequisite, the plaintiff must nonetheless exhaust before this court will hear the claim.  *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).  The exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219.  It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.  *Chase*, 286 F. Supp. 2d at 530.

Because the court may not consider an unexhausted claim, *see Bock*, 549 U.S. at 220, in this very real sense, exhaustion prior to federal suit is mandatory. *Ross v. Blake*, 578 U.S. ____, 136 S.Ct. 1850, 1857 (2016).  Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 136 S.Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

7

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). Importantly, however, the court must ensure that "any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Moreover, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *see Ross*, 136 S.Ct. at 1855. An administrative remedy is not "available" where the prisoner, "through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda*, 478 F. 3d at1225); *Kaba*, 458 F.3d at 684.

Inmates housed at an institution operated by DPSCS may avail themselves of the administrative grievance process which is designed for "inmate complaint resolution." *See generally* Md. Code (2008 Repl. Vol.), Correctional Services Article ("C.S."), §§ 10-201 *et seq.*; COMAR 12.07.01.01B(1) (defining ARP). If an ARP is filed and denied, the prisoner may appeal the denial within 30 days to the Commissioner of Correction. If the Commissioner of Correction denies the appeal, the prisoner may file a grievance with the IGO, also within 30 days. OPS.185.0002.05D; C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B. If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B. An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii).

Here, it appears that Mr. Fitriyaohniya-Jackson was aware of the administrative grievance process and the process was available to him. However, he failed to exhaust his administrative remedies prior to filing suit. After the Patuxent Warden dismissed his ARP, he did not appeal to the Commissioner of Correction, nor did he file a grievance with the IGO. Because Mr.

Fitriyaohniya-Jackson failed to exhaust prior to filing federal suit, his claims are subject to dismissal.  *See Mitchell v. Stump*, PX 17-2056, 2018 WL 4468855 *5 (D. Md. Sept. 18, 2018) (a prisoner may not exhaust administrative remedies during pendency of suit.)  In any event, should the court allow Mr. Fitriyaohniya-Jackson's claims to proceed, they would fail on the merits, as explained below.

### C. Eleventh Amendment

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from citizen suits in federal court absent state consent or Congressional action.  *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself.  *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).  The State of Maryland has not waived such immunity for claims brought pursuant to § 1983.  Accordingly, Defendants are immune from suit for actions taken in their official capacities.

### D. Officer McLeish

For an individual capacity claim to proceed, a plaintiff must allege sufficient personal participation by each defendant to demonstrate that each defendant violated the prisoner's rights protected under § 1983.  *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).  At the core of Mr. Fitriyaohniya-Jackson's complaint is the claim that Officer McLeish placed him administrative segregation for 100 days after he was assaulted by another inmate, causing him to lose his job and salary.  Construed liberally, Mr. Fitriyaohniya-Jackson alleges a violation of his constitutional rights based on his cell assignment

and loss of employment, and a violation of the Equal Protection Clause based on his allegation that his assailant, unlike him, was allowed to keep his job.

To the extent that Mr. Fitriyaohniya-Jackson alleges his placement in administrative segregation amounted to cruel and unusual punishment, his claim fails.  Indeed, the Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  U.S. Const, amend. VIII; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016).  Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

"[T]to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials acted with a sufficiently culpable state of mind."  *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (internal alterations omitted).  "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'"  *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008).  "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement."  *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).  "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions."  *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

Here, Mr. Fitriyaohniya-Jackson has not alleged or attempted to prove that he was deprived of a basic human need or that he has suffered any serious injuries as a result of being housed in administrative segregation. Thus, he has not established the imposition of cruel and unusual punishment amounting to a constitutional violation.

Moreover, it is well established that prisoners do not have a constitutional right to access jobs or to demand to be housed in one prison rather than another absent a showing of significant hardship. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978) (work assignments are at prison officials' discretion). "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Courts also should give great deference to decisions made by officials relating to their administration of a prison facility. *Bell,* 441 U.S. at 547. As the Supreme Court has cautioned, "[t]he difficulties of operating a detention center must not be underestimated by the courts." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 326 (2012). As it appears that Mr. Fitriyaohniya-Jackson was transferred to administrative segregation for his own safety, the decision to reassign him to this housing unit was reasonable, as was the temporary loss of employment that resulted. Officer McLeish is thus entitled to judgment on this claim.

Finally, Mr. Fitriyaohniya-Jackson's claim that he suffered discrimination when he lost his job while his assailant continued to work lacks merit. The Equal Protection Clause generally requires the government to treat similarly situated people alike. *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To show that his equal protection rights were violated, a plaintiff must demonstrate that he was treated differently than similarly situated inmates and the

discrimination was intentional or purposeful.  "If he makes this showing, 'the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.'" *Veney v. Wyche,* 293 F.3d 726, 730-31 (4th Cir. 2002) (citing *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)).

Here, Mr. Fitriyaohniya-Jackson fails to meet the first requirement.  Although Mr. Fitriyaohniya-Jackson alleged in his complaint that his assailant was allowed to work in July 2020, this allegation is contradicted by Mr. Fitriyaohniya-Jackson's own written statement, dated July 13, 2020, where he acknowledged that his assailant continued to be housed in administrative segregation, unable to "come out his cell[,] work & injoy [sic] his privileges."  ECF No. 19-7 at 9.  As Mr. Fitriyaohniya-Jackson fails to show that he was treated differently than similarly situated inmates, Officer McLeish is entitled to judgment on the equal protection claim.[2]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss or, in the alternative, for summary judgment is granted.  Plaintiff's claims against DPSCS and Patuxent are dismissed, and judgment is granted in favor of Officer McLeish.

A separate order follows.


Date: November 24, 2021                                    /s/
                                                           DEBORAH K. CHASANOW
                                                           United States District Judge

---

[2] In light of this ruling, the court need not address Defendants' remaining arguments.